905 So.2d 111 (2005)
STATE of Florida, Petitioner,
v.
Jerry D. ANDERSON, Respondent.
No. SC04-261.
Supreme Court of Florida.
June 16, 2005.
Charles J. Crist, Jr., Attorney General, Tallahassee, Florida, Robert J. Krauss, Chief Assistant Attorney General, Tampa *112 Criminal Appeals and Ronald Napolitano, Assistant Attorney General, Tampa, Florida, for Petitioner.
James Marion Moorman, Public Defender and Richard J. Sanders, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Respondent.
CANTERO, J.
Faced with dueling tests, we must decide which harmless error standard applies in determining whether a scoresheet error requires resentencing. In this case, the district court, consistent with its prior casesand with the test used in other districtsused a would-have-been-imposed test. Under that test, a scoresheet error requires resentencing unless the record conclusively shows that the same sentence would have been imposed using a correct scoresheet. See Anderson v. State, 865 So.2d 640, 642 (Fla. 2d DCA 2004). The court certified conflict with Hummel v. State, 782 So.2d 450 (Fla. 1st DCA 2001), which applied a could-have-been-imposed test. Under that test, scoresheet error does not require resentencing if the sentence could have been imposed (absent a departure) with a correct scoresheet.[1] This test is much more difficult for a defendant to meet. We have jurisdiction, see art. V, § 3(b)(4), Fla. Const., and granted review to resolve the conflict. See State v. Anderson, 879 So.2d 624 (Fla.2004) (granting review).
In deciding which harmless error standard applied, neither court based its decision on the type of post-conviction motion filed. Rather, both courts applied their respective tests to all post-conviction claims of scoresheet error. As we explain below, we agree with the Second District Court of Appeal that the would-have-been-imposed test should apply to scoresheet error raised either on direct appeal or by motion filed under Florida Rule of Criminal Procedure 3.850. In this case, the defendant raised the claim in a motion filed under rule 3.850. Therefore, we do not decide which standard should apply to motions filed under Florida Rule of Criminal Procedure 3.800(a), which, unlike motions filed under rule 3.850, may be filed "at any time."

I. RELEVANT FACTS
To provide context, we first review the relevant facts of the two conflicting cases. In Anderson, the defendant pled no contest to second-degree attempted murder. Anderson, 865 So.2d at 641. He was sentenced to a downward departure of two years' community control followed by five years' probation. He was later found guilty of violating his probation, and the court sentenced him to ninety months in prison. Id.[2] After his conviction was final, Anderson filed a timely pro se motion under rule 3.850, alleging, among other things, that the trial court erred in scoring his sentencing guidelines scoresheet. The circuit court agreed, finding that it had used the wrong offense level on the scoresheet. The scoresheet erroneously placed his offense level at 9 instead of 8. This error resulted in 137 total sentence points and a sentencing range of 81.75 to 136.25 months. The court's sentence of 90 months was at the low end of that (erroneous) range. A correct scoresheet would have reflected 120 sentencing points and a *113 sentencing range of 69 to 115 months. The court's sentence would have been in the middle of that (correct) range. Id. at 641-42. Under a would-have-been-imposed test, the court would determine whether it would have imposed a sentence of 90 months had it known that the sentence would lie in the middle, not the low, end of the range. Citing Hummelthe conflict casehowever, the trial court denied the motion, finding that Anderson was not "adversely affected" by the error because his sentence fell within the corrected range. Id. at 642.
On appeal, the Second District agreed that Anderson's crime was incorrectly scored, but disagreed with the standard the court applied. Id. The Second District cited to its own precedent and stated that
we have adhered to the view that a scoresheet error, like the error shown by Anderson, requires resentencing unless it can be shown conclusively that the same sentence would have been imposed if the corrected scoresheet had been used by the sentencing court.
Id. Accordingly, the district court remanded, requiring that if the trial court determined the record conclusively demonstrated that the sentence was not affected by the scoresheet error, then the court would have to attach such portions of the record to an order denying relief. Id. at 643. Absent such proof, however, the trial court was instructed to resentence Anderson with a corrected scoresheet. The Second District certified conflict with Hummel. Id.
In Hummel, the defendant filed a motion under rule 3.800(a), claiming that her sentencing scoresheet contained a seven-point errorthat is, her prior record points should have numbered nineteen, not twenty-six. Hummel, 782 So.2d at 451. With a corrected scoresheet, she claimed her sentencing range would have been reduced by one cell. The First District Court of Appeal agreed that the record supported her claim, but nevertheless denied relief:
This Court has previously held that "where a guidelines scoresheet error results in a reduced sentencing range of one cell or more, the sentence must be reversed and the case remanded for resentencing based upon a correctly calculated scoresheet." Burrows v. State, 649 So.2d 902, 904 (Fla. 1st DCA 1995). A scoresheet error is harmless, however, where a corrected scoresheet places the appellant in the same cell or where the appellant would have received the same sentence, such as in plea bargain situations. See id. However, in Heggs v. State, 759 So.2d 620 (Fla.2000), the supreme court announced a new harmless error analysis to be applied in dealing with scoresheet inaccuracies. Using the Heggs rationale, we conclude that if a person's sentence imposed under an erroneous scoresheet could have been imposed under a corrected scoresheet (without a departure) then that person shall not be entitled to resentencing.
782 So.2d at 451. Because under a corrected scoresheet, Hummel's "recommended sentence would be the same as imposed and the imposed sentence would be within the new range," the appellate court affirmed the trial court's denial of relief. Id.

II. ANALYSIS
We must decide which harmless error standard should apply in determining whether a scoresheet calculation error raised by post-conviction motion warrants resentencing: (1) whether the record conclusively shows that with a correct scoresheet the same sentence would have been imposed or (2) whether the sentence legally could have been imposed without a departure *114 from the sentencing guidelines. We first discuss the development of each standard. We then resolve the conflict.

A. The Would-Have-Been-Imposed Test
Courts have developed a harmless error analysis to determine whether a scoresheet error must be merely corrected (harmless) or whether the error warrants both correction and resentencing (harmful).[3] Under the original sentencing guidelines, the guidelines calculation resulted in a presumptive sentence of a single number of years and a "one-cell" recommended range of years. Fla. R.Crim. P. 3.701(d) (1984). A sentence calculation error was deemed harmful if it fell outside the recommended range.[4] When amended in 1988, the guidelines provided that the sentence calculation would result in (1) a presumptive sentence, (2) a one-cell recommended range, and (3) a three-cell permitted range. Fla. Rules of Criminal Procedure re Sentencing Guidelines (Rules 3.701 & 3.988), 522 So.2d 374, 377 (Fla.1988). With this change, the district courts developed the test the Second District used in this case. The theory behind it was that a correct scoresheet was essential for the trial court to exercise its discretion in sentencing a defendant. As one court explained:
Our research reveals that in cases where an error has occurred in calculating the guidelines score and the corrected score nevertheless places the defendant in the same guidelines cell, the error is considered harmless. However, when the deletion of improperly included points in the guidelines score results in a reduction of one or more cells, the sentence should be vacated and the cause remanded for resentencing upon a properly calculated scoresheet.... This rationale is consistent with the theory of the guidelines, recognized soon after the courts of this state began dealing with sentencing guidelines, that a correct calculation of the scoresheet is essential to establish a valid base for the trial court's exercise of its discretion in determining an appropriate sentence under the guidelines. Thus, it has been held, "an incorrectly calculated minimum-maximum sentence range under the guidelines constitutes an erroneous base upon which the trial court exercises its discretion in aggravating the sentence, and requires reversal for resentencing, even in the absence of a contemporaneous objection." Only in circumstances where the appellate court is clearly convinced that the defendant would have received the same sentence notwithstanding the scoresheet error, such as where the sentence was imposed in accordance with a valid plea agreement, have the sentences been affirmed under the harmless error doctrine despite the erroneous score.
Sellers v. State, 578 So.2d 339, 341 (Fla. 1st DCA) (citations omitted) (quoting Higgs v. State, 470 So.2d 75, 76 (Fla. 3d DCA 1985)), approved on other grounds, 586 So.2d 340 (Fla.1991); see, e.g., Mooney v. State, 864 So.2d 60, 62 (Fla. 4th DCA 2003) (affirming as harmless the denial of a claim of scoresheet calculation error because the record demonstrated that the departure sentence would have been imposed *115 despite the error), review denied, 873 So.2d 1223 (Fla.2004); Bell v. State, 670 So.2d 1133, 1134 (Fla. 2d DCA 1996) (reversing for resentencing "unless the record conclusively demonstrates that the trial court would have given the same sentence had it known the correct score" where the corrected scoresheet fell in a different cell, but the sentence was not only within the permitted range but in the correct cell).
The 1994 guidelines created a new sentencing structure that afforded the court discretion to sentence within a permitted range twenty-five percent above or below a recommended sentence. §§ 921.0014(2),.0016(1), Fla. Stat. (2003). Although under this system any change in the scoresheet changed the recommended sentence range, the district courts continued to use the would-have-been-imposed test. See, e.g., McGreevey v. State, 717 So.2d 1111, 1112 (Fla. 5th DCA 1998) (stating that where a scoresheet error altered the permitted range of 62.3 to 104.2 months to a range of 52.5 to 86.75 months and the defendant was sentenced to 66 months, "[the] trial judge should have a correct scoresheet before deciding whether to apply the permitted range and thus errors in scoring are not harmless"). Occasionally, however, where the change in the range was minimal, courts have found the error harmless. See, e.g., Perez v. State, 840 So.2d 1179, 1180 (Fla. 5th DCA 2003) (remanding for a scoresheet correction only to delete 1.2 points from the score, reducing the maximum sentence from 182.7 to 181.25 months, where the defendant had been sentenced to 180 months); Eppert v. State, 712 So.2d 461, 462 (Fla. 2d DCA 1998) (remanding for a two-point correction of the scoresheet but not for resentencing where the error resulted in only a lower minimum range from 40.95 to 39.45 months and the defendant was sentenced to 48 months).
Finally, under the Criminal Punishment Code, which applies to crimes committed after September 1998 (not to Anderson's), the sum of the total sentence points establishes the lowest permissible sentence, and the trial court may sentence a defendant anywhere from that sentence up to and including the statutory maximum. See § 921.0024(2), Fla. Stat. (2003). Thus, any change reducing the total sentence points reduces the lowest permissible sentence. In such cases, courts also have applied the would-have-been-imposed test. See, e.g., Stallings v. State, 876 So.2d 686, 688 (Fla. 5th DCA 2004) (reversing for resentencing based on a two-point error in the Code scoresheet and concluding that the court "[could not] be sure that the lower score would not have affected the sentencing decision"); White v. State, 873 So.2d 600, 600-01 (Fla. 5th DCA 2004) (remanding for correction of a scoresheet where the lowest permissible sentence was reduced from 53 to 44.4 months, but the record conclusively demonstrated that the trial court would have imposed the same sentence of 53 months even with a correct scoresheet).
We announced the harmless error test, as it applied to errors raised on direct appeal, in State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). We defined harmful error as error about which an appellate court cannot say "beyond a reasonable doubt that the error complained of did not contribute to the verdict." Id. The test focuses on the effect of the error on the verdict or the sentence. See Albritton v. State, 476 So.2d 158, 160 (Fla.1985) (holding that when a departure sentence is based on valid and invalid reasons, resentencing is required unless the appellate court concludes beyond a reasonable doubt that "absence of the invalid reasons would not have affected the departure sentence"). The would-have-been-imposed test applies *116 this standard to scoresheet error. It requires an examination of the record for conclusive proof that the scoresheet error did not affect or contribute to the sentencing decision. If the reviewing court cannot determine conclusively from the record that the trial court would have imposed the same sentence despite the erroneous scoresheet, remand for resentencing is required.
Most courts use the would-have-been-imposed harmless error test on direct appeal from a sentence. See, e.g., Val v. State, 741 So.2d 1199, 1200 (Fla. 4th DCA 1999) (reversing for resentencing because the court could not "conclude with certainty that appellant's sentence would have been the same if the trial court had used a properly prepared scoresheet"); Williams v. State, 720 So.2d 590, 591 (Fla. 2d DCA 1998) (remanding for resentencing with a corrected scoresheet because "it cannot be said that the same sentence would have been imposed absent the error we here correct"); Annunziata v. State, 697 So.2d 997, 999 (Fla. 5th DCA 1997) (remanding "[b]ecause it does not appear beyond reasonable doubt that different sentences would not have been imposed had the correct score and range been presented to the trial court"); Jenkins v. State, 687 So.2d 360, 361 (Fla. 4th DCA 1997) (holding that scoresheet error required reversal for resentencing because "we are unable to conclude that appellant's sentence would have been the same had the trial court utilized a correctly calculated scoresheet"); Diaz v. State, 667 So.2d 991, 992 (Fla. 3d DCA 1996) ("While Diaz' 12-year sentence falls within the corrected recommended range, we are unable to conclude from this record that Diaz' sentence would have been the same had the trial court used a correctly calculated scoresheet."); Sellers, 578 So.2d at 341 (applying the would-have-been-imposed test and stating that to find harmless error would require the court to engage in "pure speculation" about the trial court's exercise of sentencing discretion, thus vacating the sentence and remanding for resentencing).
Courts also have applied this test to claims raised under rule 3.850, as evidenced not only by the case before us for review, but others as well. For example, in Walker v. State, 880 So.2d 1262, 1265 (Fla. 2d DCA 2004), the court reversed for further proceedings the defendant's claim of scoresheet error under rule 3.850. The district court concluded that "[u]nless the record can conclusively demonstrate that the trial court would have sentenced Walker to the same sentence using a corrected scoresheet, he is entitled to be resentenced using a corrected scoresheet." Id.; accord Knowles v. State, 791 So.2d 534, 535 (Fla. 4th DCA 2001) (reversing, where State conceded scoresheet error raised in defendant's 3.850 motion, for the trial court to "provide proof that the sentencing guidelines scoresheet error did not affect Knowles' sentence or to re-sentence him with a corrected scoresheet"); Bigham v. State, 761 So.2d 431, 432-33 (Fla. 2d DCA 2000) (reversing the summary denial of defendant's 3.850 claim of scoresheet error for record attachments conclusively proving that the error did not affect the defendant's sentence or for resentencing with a correct scoresheet); Hammett v. State, 746 So.2d 1190, 1191 (Fla. 2d DCA 1999) (reversing for resentencing, where the trial court conceded error, the summary denial of the defendant's scoresheet error claim under rule 3.850 because the "record d[id] not conclusively demonstrate the trial court would have given Hammett the same sentence if the scoresheet had been properly calculated").

B. The Could-Have-Been-Imposed Test
In Hummel, the conflict case, the First District renounced the would-have-been-imposed *117 test. 782 So.2d at 451. The court instead embraced the "new harmless error analysis to be applied in dealing with scoresheet inaccuracies," which the district court believed we adopted in Heggs v. State, 759 So.2d 620 (Fla.2000). Hummel, 782 So.2d at 451. As we explain below, however, Heggs did not supplant the would-have-been-imposed test for claims alleging scoresheet error.
In Heggs, we held that chapter 95-184, Laws of Florida, which adopted the 1995 sentencing guidelines, violated the Florida Constitution's single subject requirement. 759 So.2d at 621. We then discussed the remedy for sentences imposed under the now-invalidated guidelines:
We realize that our decision here will require, among other things, the resentencing of a number of persons who were sentenced under the 1995 guidelines, as amended by chapter 95-184. However, only those persons adversely affected by the amendments made by chapter 95-184 may rely on our decision here to obtain relief. Stated another way, in the sentencing guidelines context, we determine that if a person's sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), then that person shall not be entitled to relief under our decision here.

Heggs, 759 So.2d at 627 (emphasis added). We did not consider in Heggs the concern that drives the would-have-been-imposed testthe effect of changes in the sentencing range on the judge's discretion when sentencing a defendant under the guidelines. Rather, we were concerned about the effect on sentences imposed under the 1995 guidelines of our holding those guidelines unconstitutional. Accordingly, we determined that if the sentence unconstitutionally imposed could legally have been imposed under the still-valid 1994 guidelines (without a departure) no resentencing was required.[5]
Therefore, the could-have-been-imposed test adopted in Hummel rests on a faulty premise: that Heggs imposed a new standard for determining whether scoresheet error was harmless. Heggs simply did not concern the situation presented here, and its remedy for sentences imposed under the unconstitutional 1995 guidelines does not apply to situations that do not involve those guidelines.[6]

C. The Appropriate Standard
As we have recognized, it is "undoubtedly important for the trial court to have the benefit of a properly calculated scoresheet when making a sentencing decision." State v. Mackey, 719 So.2d 284, 284 (Fla. 1998). In fact, because scoresheet error is often readily spotted and corrected, we have placed the onus of ensuring a correct scoresheet on both the prosecutor and defense counsel. State v. Whitfield, 487 So.2d 1045, 1047 (Fla.1986) ("We emphasize that we place an equal responsibility *118 for correction of such [scoresheet] errors on the prosecutor as on the defense counsel.").
Recognizing the importance of a correct scoresheet, our rules provide defendants several opportunities for raising such error. If preserved for review, scoresheet error may be addressed on direct appeal. Florida Rule of Criminal Procedure 3.800(b) also allows a motion in the trial court to correct such error before and during the pendency of an appeal. Next, rule 3.850 provides a two-year window after a conviction becomes final for a defendant to file a motion raising such claims. Finally, rule 3.800(a) allows a defendant to raise a sentencing error "at any time."
As explained above, courts have applied the would-have-been-imposed test both on direct appeal and to post-conviction claims. The standard is no different from the one announced in DiGuiliowhether beyond a reasonable doubt the error did not contribute to the verdict. See 491 So.2d at 1139.
Because it is essential for the trial court to have the benefit of a properly calculated scoresheet when deciding upon a sentence, we agree that the would-have-been-imposed standard should apply to motions filed under rule 3.850 to correct scoresheet error. Rule 3.850 places numerous burdens upon defendants, who largely file such motions pro se. The motion must be sworn and must meet certain pleading requirements. Importantly, the motion must be filed within two years after the conviction and sentence are final.
Because the defendant in this case timely filed his motion under rule 3.850, meaning he filed it within two years after his conviction was final, we need not decide whether the would-have-been-imposed harmless error standard also should apply to motions filed under rule 3.800(a), the rule under which Hummel filed her claim in the conflict case.[7] We do note, however, that rule 3.800(a) permits a motion to be filed "at any time" after a conviction and sentence are finaleven decades later. After the time for filing 3.850 motions has passed, the State's interests in finality are more compelling. See, e.g., Maddox v. State, 760 So.2d 89, 100 n. 8 (Fla.2000) (noting that "clearly the class of errors that constitute an `illegal' sentence that can be raised for the first time in a post-conviction motion decades after a sentence becomes final is a narrower class of errors than those termed `fundamental' errors that can be raised on direct appeal even though unpreserved"). Moreover, the would-have-been-imposed test, which requires a sentencing court to determine whether it would have imposed the same sentence using a correct scoresheet, may lose its effectiveness when a judge must decide the issue several years after the original sentencing. Therefore, the would-have-been-imposed standard may be too speculative and subjective for purposes of rule 3.800(a). Because Anderson's motion was timely filed within the two-year period under rule 3.850, however, we need not reach that issue. We simply note that our decision in this case applies only to scoresheet error raised on direct appeal or in a motion filed under rule 3.850.

III. CONCLUSION
For the foregoing reasons, we approve the Second District's use of the would-have-been-imposed harmless error test to scoresheet errors raised under rule 3.850 *119 motions. We disapprove Hummel to the extent it is inconsistent with this opinion.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, and BELL, JJ., concur.
QUINCE, J., dissents with an opinion.
QUINCE, J., dissenting.
I dissent from the majority's determination that the harmless error standard that should be applied to scoresheet errors is the "would have been imposed" standard. I believe the proper standard is the "could have been imposed" standard that has been applied in other scoresheet situations.
As the majority correctly points out, this Court determined in Heggs v. State, 759 So.2d 620 (Fla.2000), that a defendant who was sentenced under an invalid sentencing guideline was not entitled to be resentenced if the sentence imposed under that erroneous scoresheet could have been imposed under the correct scoresheet without a departure. More recently, in Banks v. State, 887 So.2d 1191 (Fla.2004), we reiterated this standard. In Banks, the defendant filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 relying on the Heggs decision. After restating the standard from Heggs, we concluded that the sentence received under the erroneous scoresheet could have been imposed under the correct scoresheet and denied relief. See Banks, 887 So.2d at 1194.
The defendant in this case was sentenced after a probation revocation to ninety months in prison. After his conviction was final, he filed a 3.850 motion alleging a scoresheet error. It was determined that the sentencing range under the original, erroneous scoresheet was 81.75 to 136.25 months. The correct scoresheet reflected a sentencing range of 69 to 115 months. Thus, the 90-month sentence was a sentence that could have been imposed under the correct scoresheet.
Both the defendant in Banks and the defendant in this case filed 3.850 motions contesting the legality of their sentences. The same test should be applicable to these situations. Therefore, I would adhere to the could have been imposed standard used in Heggs and Banks.
NOTES
[1] The Second District again certified conflict with Hummel in Walker v. State, 880 So.2d 1262, 1265 (Fla. 2d DCA 2004). In addition, the Fourth District Court of Appeal also has certified conflict with Hummel. Cruz v. State, 884 So.2d 105 (Fla. 4th DCA 2004).
[2] Anderson did not appeal, but did file a motion for reconsideration of the sentence under Florida Rule of Criminal Procedure 3.800(c), which was denied.
[3] Such analysis generally does not apply where the defendant entered a plea agreement, unless the plea agreement specifically provided for a guidelines sentence. Ruff v. State, 840 So.2d 1145, 1147 (5th DCA 2003) ("In essence, scoresheet errors are considered harmless when a sentence is the result of a negotiated plea agreement.").
[4] At that time, such an error was deemed a de facto departure sentence and therefore illegal. State v. Whitfield, 487 So.2d 1045, 1046 (Fla. 1986).
[5] The State argues here, as it did in the district court, that in this case the trial court improperly used the 1995 guidelines, and therefore the case is governed by Heggs. The trial court used the 1994 guidelines scoresheet, but scored the crime at the invalid 1995 guidelines offense level. Such an error is only coincidentally, not substantively, related to Heggs. Therefore, Heggs does not apply.
[6] In contrast, our decision in Banks v. State, 887 So.2d 1191 (Fla.2004), involved a Heggs claim, not a scoresheet error, as stated by the dissent. See dissenting op. at 1. Banks negotiated a plea for a term of years, not a minimum guidelines sentence. His sentence fell within the 1994 guidelines but at the lower end of the 1995 guidelines. Id. at 1193. That is, the sentence could have been imposed under the 1994 guidelines. We held that "under the plain language of our decision in Heggs, relief must be denied." Id. at 1194.
[7] The opinion in Hummel does not reveal when the defendant filed her motion or when her sentence became final. 782 So.2d at 451.